Sheehan & Associates, P.C.

United States District Court
Southern District of New York                                      7:20-cv-07497

| | |
|---|---|
| Luke Magnuson, Laura Vitaliani, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>The Price Chopper, Inc.,<br><br>Defendant | Class Action Complaint |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      The Price Chopper, Inc. ("defendant") manufactures, distributes, markets, labels and sells vanilla bean ice cream under its "PICS"  brand ("Product").

2.      The Product is available to consumers from defendant's retail stores and website  - Price Chopper and Market 32 – and is sold in cartons of 1.5 Quarts.

3.      The relevant front label representations include "Vanilla Bean," "Vanilla Bean Ice Cream," an amber color patter evocative of vanilla, two scoops of the product with noticeable "vanilla bean specks" and the brand, "PICS."



4.      The representations are misleading because the Product contains artificial, non-vanilla flavors not disclosed to consumers, less vanilla than consumers expect and the vanilla bean specks only give the illusion of more vanilla but do not contribute any vanilla taste.

5.      Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[1]

6.      Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[2]

7.      Label Insight determined that 76% of consumers avoid products with artificial flavors.[3]

8.      Natural flavors "almost always cost[s] much more than an artificial flavor," so

---

[1] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[3] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

companies and consumers are willing to pay higher prices for the real thing – orange flavor from oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.[4]

9.      Flavoring ingredients, especially for products labeled as vanilla, are typically the most expensive ingredient in a food, and vanilla has reached record high prices in recent years.[5]

10.     Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[6]

11.     According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

12.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[7]

13.     Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[8]

14.     An example of the compounds which provide vanilla's flavor are shown in table below, identified through gas chromatography-mass spectrometry ("GC-MS") of a sample of Simply Organic Madagascar Vanilla Extract.

---

[4] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[5] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.
[6] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[7] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").
[8] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.

Table 2

**Sheehan & Associates, P.C., Project #7643-2**
**Simply Organic Madagascar Pure Vanilla Extract**
**Production Code: 9274**
**Concentrated Ether Extract (Water-Soluble Components Washed Out) by GC-MS**

Data File = TSQA4027

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guaiacol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

15.    While vanillin is the most abundant compound (MS Scan # 759, 77.4301 Peak Area %), numerous other compounds contribute to vanilla's taste in small amounts.

16.    Methyl cinnamate (MS Scan # 751) and p-cresol (MS Scan # 415) provide cinnamon and creamy flavor notes to vanilla.

17.    In early 2018, in response to rampant misleading labeling of vanilla products, flavor industry representatives urged their peers to truthfully label vanilla foods so that consumers are

4

not misled. *See* John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake") ("There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations.").

18.    The authors explain that relevant regulations "require that food products be labeled accurately so that consumers can determine whether the product is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans.[9]

19.    Requirements for vanilla products were "established by the FDA in the 1960s over growing concern of adulteration of vanilla extract with less valuable substances," which alleviated "potential consumer fraud by establishing specific requirements for vanilla extract and other standardized vanilla products."[12]

20.    The vanilla standards were promulgated to end practices which "deprive the consumer of value the product is represented to have, and for which the consumer pays," such as "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure.'"[13]

21.    At the time, the FDA stated that "the purposes of the standards are to assure that the consumer gets what is expected when purchasing vanilla products."[14]

22.    The FDA section chief in charge noted: "The prime purpose sought to be served by

---

[9] Hallagan and Drake.
[12] *Id*; New York has adopted all federal regulations for food labeling through its Agriculture and Markets Law ("AGM") and accompanying regulations, Title 1, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").
[13] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.
[14] Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.

the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards."[15]

23.    Industry leaders supported vanilla standards to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[16]

24.    To correctly label foods with a characterizing flavor of vanilla, Hallagan and Drake stress two key points:

1.    "The federal standards of identity for vanilla flavorings at 21 CFR Section 169 and ice cream at 21 CFR Section 135, and their labeling requirements, take precedence over the general flavor and food labeling regulations at 21 CFR Section 101.22;" and

2.    "The federal standard of identity for vanilla flavorings at 21 CFR Section 169 applies to both the flavorings sold directly to consumers and to food manufacturers for use in finished food products."[17]

25.    The IDFA, Hallagan and Drake and FEMA point out that the regulations for vanilla products and ice cream "are supplemented by a formal FDA Advisory Opinion, and a collection of FDA-issued regulatory correspondence," which support this conclusion.[18]

26.    Ice cream has specific requirements, according to FEMA:

---

[15] Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA.
[16] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.
[17]
[18] Hallagan, endnote 7, FDA, 1983. Letter dated 9 February 1983 from FDA to FEMA constituting an FDA Advisory Opinion (21 C.F.R. § 135.110(f) "makes no provision for any natural flavors other than natural characterizing flavors" which means the "FDA must treat all natural flavors that simulate the characterizing flavor as artificial flavors when deciding what name should appear on the principal display panel.").

> When consumers purchase ice cream labeled as "vanilla ice cream" they expect it to be flavored with vanilla flavoring derived from vanilla beans *unless labeled otherwise*. As we shall see, this expectation is codified in two U.S. federal standards of identity, one for vanilla flavorings and one for ice cream.[26]

(emphasis added).

27.    Ice cream flavor regulations distinguish between three categories, with Category 1 referring to ice cream which gets its flavor only from its natural characterizing flavor – i.e., vanilla from vanilla beans, strawberry from strawberries, etc. *See* 21 C.F.R. §135.110(f)(2)(i) ("If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'").

28.    That the ice cream regulations are meant to be read "together with the vanilla standard of identity means that the characterizing flavor for this [Category 1] ice cream must be provided only by vanilla extract complying with the standard at 21 CFR Section 169.175, or another standardized vanilla flavoring derived solely from vanilla beans."[28]

29.    All flavors from sources other than the natural characterizing flavor are considered "artificial flavors" in ice cream, according to the FDA, FEMA and the International Dairy Foods Association ("IDFA").[29]

30.    The Product's representations are false, misleading and unlawful because it contains artificial vanilla flavors and less vanilla than consumers expect.

31.    The ingredient list designates "Natural Flavor" instead of an exclusively vanilla ingredient like "vanilla extract" or "vanilla flavoring." *See* 21 C.F.R. § 169.175 (b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'"); see also 21 U.S.C. §343(g)

---

[26] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Apr. 25, 2018.
[28] Hallagan at p. 11.
[29] IDFA, Ice Cream & Frozen Desserts Labeling Manual, 2019 Ed.

(requiring ingredients to be listed with "the name of the food specified in the definition and standard").



**INGREDIENTS:** MILKFAT AND NONFAT MILK, SUGAR, CORN SYRUP, HIGH CORN SYRUP, WHEY, NATURAL FLAVOR, MONO & DIGLYCERIDES, GUAR GUM, LOCUST BEAN GUM, POLYSORBATE 80, GROUND VANILLA BEANS AND CARRAGEENAN.

32.    In vanilla ice cream, the designation of an ingredient as "natural flavor" means it is a combination of vanilla and non-vanilla flavor.

33.    This "Natural Flavor" is actually an ingredient designated as "Vanilla With Other Natural Flavors."

34.    The Product "contains natural flavor compounds that simulate vanilla but are not derived from vanilla beans," and are therefore considered artificial flavors.[30]

35.    Representing the Product as "Vanilla Bean" instead of "Vanilla Bean Flavored," "Artificial Vanilla Bean" or "Artificially Flavored Vanilla Bean" is deceptive and misleading to consumers. *See* 21 C.F.R. §135.110(f)(2)(iii) ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates").

36.    The Product's front label does not state "contains some vanilla" or "made with a drop of vanilla," but designates the characterizing flavor as "Vanilla" without qualifying terms.

37.    The Product's inclusion of "Ground Vanilla Beans" is misleading because their

---

[30] Hallagan and Drake, p. 48.

presence, in the product name and in the label image, gives consumers the misleading impression the Product contains more vanilla than it does.

38.    However, these are not the remnant of vanilla beans which have provided their vanilla flavor to *this* Product, but exhausted vanilla bean specks.

39.    Vanilla bean specks are the:

tiny black seeds that line the inside of a vanilla bean.  When flavor houses extract vanilla beans to make vanilla extract, the goal is to extract all possible flavor from the bean, including its seeds. After the vanilla extract has percolated for an optimal time, the vanilla bean pods and seeds sink to the bottom and are filtered from the extract. As a final step, the vanilla bean seeds are sifted from the spent vanilla bean pods. The resulting bean pods and seeds are known as "exhausted," because all flavor has been extracted.[41]

40.    The FDA has have long prohibited adding such ingredients to food, stating:

Spent vanilla beans are considered an adulterant under Section 402(b) of the Federal Food, Drug, and Cosmetic Act.  We have consistently considered spent spice ingredients adulterated because of extraction of essential ingredients.[42]

41.    According to the TTB, the addition of "ground vanilla beans which had been exhausted…do not constitute a legitimate article of commerce for food use in that the valuable constituents, the flavoring principles, have been omitted or abstracted therefrom."[43] *See* 21 U.S.C. § 342(b)(1) ("A food shall be deemed to be adulterated – If any valuable constituent has been in whole or in part omitted or abstracted therefrom.").

42.    The FDA and TTB are clear that "This type of adulteration cannot be corrected by any form of labeling."[44]  *See* Moses Letter ("We are unable to suggest any way that your client might use a combination of spent vanilla beans with other flavoring materials in ice cream.").

---

[41] Cook's Blog, Vanilla Bean Seeds: A Troubling New Trend, June 13, 2019.
[42] Walter Moses, Division of Industry Advice, FDA, to Alan H. Kaplan, May 10, 1965.
[43] Letter from Chester T. Hubble, Director of Administrative Review, Bureau of Enforcement, Bureau of Alcohol, Tobacco Tax Division, U.S. Treasury to Anthony Filandro, Virginia Dare Extract Company, Inc., August 23, 1960; TTB has authority over extract of vanilla due to alcohol content.
[44] Hubble letter.

43.    A reasonable consumer cannot follow up or learn the truth that the Product contains non-vanilla artificial flavors, from reading the Product's ingredient list because defendant labels the flavor as "Natural Flavor" and fails to provide clarification elsewhere on the Product.

44.    A reasonable consumer cannot follow up or learn the truth that the Product contains exhausted vanilla bean seeds from reading the Product's ingredient list because defendant labels this as "Ground Vanilla Beans" and fails to provide clarification elsewhere on the Product.

45.    Defendant knows consumers will pay more for the Product because the label only states "Vanilla Bean."

46.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

47.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

48.    The value of the Product that plaintiffs purchased and consumed was materially less than its value as represented by defendant.

49.    Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them.

50.    As a result of the false and misleading labeling, the Product are sold at a premium price, approximately no less than $4.99 per 1.5 Quart, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

51.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

52.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

53.    Plaintiff Luke Magnuson is a citizen of Massachusetts.

54.    Defendant The Price Chopper, Inc., is a New York corporation with a principal place of business in Schenectady, Schenectady County, New York and is a citizen of New York.

55.    "Minimal diversity" exists because plaintiff Luke Magnuson and defendant are citizens of different states.

56.    Upon information and belief, sales of the Product in Massachusetts and New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

57.    Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff Vitaliani to purchase the Product and the misleading representations and/or their recognition as such.

58.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

59.    Plaintiff Luke Magnuson is a citizen of Marlborough, Middlesex County, Massachusetts.

60.    Plaintiff Laura Vitaliani is a citizen of Pine Bush, Putnam County, New York.

61. Defendant The Price Chopper, Inc. is a New York corporation with a principal place of business in Schenectady, New York, Schenectady County and is a citizen of New York.

62. Defendant operates at least 132 grocery stores, which include the Price Chopper and Market 32 stores, across New York, Connecticut, Massachusetts, Vermont, New Hampshire, Pennsylvania and Rhode Island.

63. During the relevant statutes of limitations, plaintiffs purchased the Product within their districts and/or States for personal and household consumption and/or use in reliance on the representations of the Product.

64. Plaintiff Luke Magnuson purchased the Product on one or more occasions, during the relevant period, at defendant's Price Chopper and/or Market 32 stores, on or around April 15, 2020, at locations including but not necessarily limited to 240 E Main St Marlborough, MA 01752.

65. Plaintiff Laura Vitaliani purchased the Product on one or more occasions, during the relevant period, at defendant's Price Chopper and/or Market 32 stores, in or around the end of 2019 and/or beginning of 2020, at locations including but not necessarily limited to 511 Schutt Road Ext, Middletown, NY 10940.

66. Plaintiffs bought the Product at or exceeding the above-referenced prices because they liked the product for its intended use and relied upon the front label claim to expect its taste only came from the identified front label ingredient.

67. Plaintiffs were deceived by and relied upon the Product's deceptive labeling.

68. Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

69. The Product was worth less than what Plaintiffs paid for it and they would not have paid as much absent Defendant's false and misleading statements and omissions.

70.    Plaintiffs intends to, seeks to, and will purchase the Product again when they can do so with the assurance that Product's labels are consistent with the Product's components.

Class Allegations

71.    The class will consist of all purchasers of the Product who reside in Massachusetts and New York during the applicable statutes of limitations.

72.    Plaintiffs seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

73.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

74.    Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

75.    Plaintiffs are adequate representatives because their interests do not conflict with other members.

76.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

77.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78.    Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

79.    Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350,
Massachusetts General Laws Chapter 93A
(Consumer Protection Statutes)

80.    Plaintiffs incorporate by reference all preceding paragraphs.

81.    Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

82.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

83.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

84.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

85.    The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

86.    The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts.

87.    The front label gives the impression the Product has more of the characterizing ingredient than it does.

88.    Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

89.    Where applicable, defendant was provided adequate notice of the violation of

relevant Massachusetts consumer protection laws.

90.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

91.    Plaintiffs incorporate by reference all preceding paragraphs.

92.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

93.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

94.    The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

95.    The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

96.    The front label gives the impression the Product has more of the characterizing ingredient than it does.

97.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

98.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

99.    The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

100.    Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

101.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

102.    Plaintiffs incorporate by reference all preceding paragraphs.

103.    The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiffs and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

104.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

105.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

106.    The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

107.    The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

108.    The front label gives the impression the Product has more of the characterizing

ingredient than it does.

109.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

110.   Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

111.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

112.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

113.   Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

114.   Plaintiffs incorporate by reference all preceding paragraphs.

115.   Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

116.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

117.   The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

118.   The front label omits qualifying terms required to modify a characterizing flavor's

representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

119.  The front label gives the impression the Product has more of the characterizing ingredient than it does.

120.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

121.  Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

122.  Plaintiffs incorporate by reference all preceding paragraphs.

123.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory

    claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and

    experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   September 12, 2020

                                            Respectfully submitted,

                                            Sheehan & Associates, P.C.
                                            /s/Spencer Sheehan
                                            Spencer Sheehan
                                            60 Cuttermill Rd Ste 409
                                            Great Neck NY 11021-3104
                                            Tel: (516) 303-0552
                                            Fax: (516) 234-7800
                                            *spencer@spencersheehan.com*
                                            E.D.N.Y. # SS-8533
                                            S.D.N.Y. # SS-2056

                                            Law Offices of Peter N. Wasylyk
                                            Peter N. Wasylyk (*PHV* to file)
                                            1307 Chalkstone Ave
                                            Providence RI 02908
                                            Telephone: (401) 831-7730
                                            Fax: (401) 861-6064
                                            *pnwlaw@aol.com*

7:20-cv-07497
United States District Court
Southern District of New York

Luke Magnuson, Laura Vitaliani, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

The Price Chopper, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 12, 2020

/s/ Spencer Sheehan
Spencer Sheehan